UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MITCHELL D. FIELDS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 4:11CV581 CDP |
| UNITED PARCEL SERVICE, INC., | ) ) ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

Plaintiff Mitchell D. Fields was employed as a driver by defendant United Parcel Service, Inc. (UPS). Fields was discharged from employment in 2010 on the grounds of dishonest conduct and other violations of company policy. He filed a grievance, but it was denied and his termination was upheld. Fields then filed this action alleging employment discrimination on the basis of his disability and retaliation, both in violation of the Missouri Human Rights Act. Because the undisputed evidence demonstrates that Fields's complaint does not raise any genuine issues of material fact for trial, I conclude that UPS is entitled to summary judgment on Fields's complaint.

## Undisputed Facts

Fields suffers from diabetes, which was first diagnosed in 2007, and high blood pressure. He began working for UPS in 1979. Since 2001, he has worked as a "feeder driver," running a route between Earth City, Missouri, and Chenoa,

Illinois, to exchange loaded trailers with other feeder drivers in order to transport them between UPS sorting facilities. His normal work shift began at 1:50 a.m., and he usually completed his route and clocked out by about 11:30 a.m.

UPS's feeder trucks are equipped with a device called "IVIS," into which the driver records information about his activities throughout the course of his route. It then creates a time card to reflect that information, which is used to calculate the driver's pay. For example, when drivers start their days, they must push the "leave" button to record the fact that they are leaving their original location. Throughout the day, all drivers are given a one-hour period for "meal," which can be used all at once or divided into several breaks. When drivers start a meal period, they are instructed to push the "meal" button on the IVIS, and they must press it again at the end of that meal period. It appears that there was not a written policy to address restroom breaks. Fields testified at his deposition that he was instructed by several supervisors to use his meal time for restroom breaks, but his Feeder Manager Daryl Bradshaw testified that there could be exceptions to this rule for emergency situations. In addition to collecting the information recorded by drivers, the IVIS continuously monitors the speed at which the vehicle is traveling and its engine speed, and it creates a tachograph report to reflect that data.

Beginning January 1, 2010, the speed limit in Illinois was increased from fifty-five to sixty-five miles per hour. Because this would allow Fields and other employees who drove in Illinois to complete their routes more quickly – and therefore work shorter hours and receive less compensation – one of the managers had a meeting with the drivers and their union representatives to explain that the drivers were expected to follow the new, higher speed limit. During the first week of January, plaintiff was reminded by several supervisors to drive the new speed limit. According to his tachometer reports from January 4, 5, and 6, 2010, however, Fields was driving below sixty-five miles per hour. On January 7, Fields received a warning letter for failing to follow instructions. His tachometer reports from January 11 and January 12 also showed that he was driving below the speed limit, so he received a letter on January 15 issuing him a one-day suspension.

After his suspension, Fields's tachometer reports began showing that he was driving the increased speed limit. However, his routes were not being completed any more quickly than they were when he was driving the previous speed limit, so Bradshaw asked Feeder Supervisor Mark Edgar to review Fields's timecards and tachometer reports to determine why Fields was not completing his routes earlier. There were time discrepancies between the timecards and the tachometer reports on January 25, 26, 27, 28, and 29, and on February 1, 2, and 3, ranging from twenty-seven minutes to fifty-nine minutes.

As a result of these discrepancies, Bradshaw sent Edgar and Feeder Supervisor Ron Schleicher to secretly follow Fields during his route on February 4, 2010 to observe his activities. Based on their observations, there was a time discrepancy of seventy-seven minutes between the tachometer report and Fields's timecard, demonstrating that Fields actually worked for seventy-seven minutes less than what he recorded on his timecard. UPS terminated Fields's employment on February 5, 2010.

Fields filed a grievance pursuant to his collective bargaining agreement, challenging his termination. A hearing was held, and the panel voted to deny his grievance and to uphold his termination. He then filed a charge of discrimination with the Missouri Commission on Human Rights and eventually brought this lawsuit against his former employer in Missouri state court. UPS removed the case to this court on the basis of diversity jurisdiction on March 30, 2011.

## Discussion

In determining whether summary judgment should issue, I must view the facts and inferences from the facts in the light most favorable to the nonmoving party, here plaintiff. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 247 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e).

Disability Discrimination

Count I of plaintiff's complaint alleges that UPS discriminated against him on the basis of his disability – caused by diabetes and high blood pressure – by terminating him for making excessive stops, which he claims were necessary because of his medical conditions. Fields also asserts that UPS did not provide him with an accommodation for his disability. UPS argues that Fields was not disabled within the meaning of the Missouri Human Rights Act (MHRA), and that even if he was disabled, his disability was not a contributing factor to his termination.

Under the MHRA, an employer is prohibited from discharging or otherwise discriminating against an individual on the basis of "race, color, religion, national origin, sex, ancestry, age or disability." Mo. Rev. Stat. § 213.055. The Act defines "discrimination" as "any unfair treatment . . . based on disability . . . ," Mo. Rev. Stat. § 213.010(5), and it defines "disability" as "a physical or mental impairment which substantially limits one or more of a person's major life

activities, . . . which with or without reasonable accommodation does not interfere with performing the job . . . ." Mo. Rev. Stat. § 213.010(4). A claim of discrimination under the MHRA survives summary judgment "if there is a genuine issue of material fact as to whether . . . disability was a 'contributing factor' in the [defendant's] termination decision." *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 820 (Mo. 2007) (en banc). "A 'contributing' factor has been defined as one 'that contributed a share in anything or has a part in producing the effect.'" *Williams v. Trans States Airlines, Inc.*, 281 S.W.3d 854, 867 (Mo. Ct. App. 2009) (citations omitted). This analysis involves a determination of "whether the record shows two plausible, but contradictory, accounts of the essential facts and the 'genuine issue' in the case is real, not merely argumentative, imaginary, or frivolous." *Daugherty*, 231 S.W.3d at 820 (citation omitted).

In this case, Fields's complaint can only survive summary judgment if there is a genuine issue of material fact as to whether his disability was a contributing factor in his termination. As an initial matter, UPS argues that Fields has not demonstrated that he is "disabled" within the meaning of the MHRA or that he requested any accommodations. As discussed above, a disability under the MHRA must "substantially limit" at least one of the plaintiff's major life activities. Here, Fields claims that his diabetes and high blood pressure "adversely affected . . . his ability to eat, see and work without having time to take frequent

restroom breaks." UPS provided evidence in the form of deposition testimony from Fields's treating physician, Dr. Spezia, who corroborated Fields's testimony that his blood sugars were at times outside the normal range and that, during those times, his blood sugars were not well controlled and could have caused the side effects about which Fields complained. However, Dr. Spezia explained that by April 2008, he had gotten Fields's blood sugars controlled, demonstrated by Fields's continued use of the same medications in the same manner up until the time of his termination. UPS argues that Fields must not have been suffering from the alleged adverse side effects if he had not seen Dr. Spezia to change his medication in response to such serious problems. Further, UPS points to the fact that Fields was required to get a Department of Transportation (DOT) physical each year, and he consistently passed those and at all times held a valid DOT card demonstrating his fitness to drive.

In response to this medical testimony and evidence that he passed his annual physicals, Fields merely repeats the same allegations that he did, in fact, suffer from serious adverse side effects. He also argues that, "[i]n essence, [he] implicitly requested an accommodation" from Edgar and Bradshaw. This contention, without any evidence that he told his employer of his physical restrictions or how an accommodation would allow him to perform the job, is not sufficient under Missouri law to support his claim that he was unlawfully denied

an accommodation for his disability. *See Loman v. DaimlerChrysler Corp.*, 243 S.W.3d 474, 480 (Mo. Ct. App. 2007) ("Under the MHRA, the 'employer has an affirmative duty to reasonably accommodate an employee's handicap but the burden is on the employee to establish that with reasonable accommodation he could perform the job.'" (internal citations omitted)). Therefore, because the undisputed medical evidence shows that Fields's diabetes and high blood pressure were controlled, and because he did not adequately demonstrate that he requested and was denied a reasonable accommodation for those conditions, Fields does not qualify as disabled under the MHRA so as to support his claim of disability discrimination.

Furthermore, even if Fields is "disabled" under the MHRA, he has not provided evidence demonstrating that such disability was a contributing factor to his termination. UPS has provided several legitimate, non-discriminatory reasons underlying its decision to terminate Fields from his position as a feeder driver, and Fields has failed to proffer any evidence demonstrating that his alleged disability was a contributing factor to that termination decision.

The disciplinary problems that UPS claims to have ultimately led to Fields's termination began on January 4, 2010, when Fields failed to follow the increased speed limit in Illinois for the first time, despite instructions from supervisors to do so. In his deposition, Fields admitted that multiple supervisors told him that he

needed to drive the new speed limit, and he acknowledged that his tachometer reports showed that he was driving below sixty-five miles per hour. Though his response brief disputes the accuracy of the tachograph reports, Fields stated in his deposition that he did not dispute the accuracy of those reports. Even after Fields was instructed to follow the higher limit by numerous supervisors, he received first a warning letter and then a one-day suspension for failure to follow these instructions. He only began driving the higher limit after his one-day suspension.

Fields does not claim that his failure to follow the speed limit had any relation whatsoever to his alleged disability. He did not claim that it impaired him from driving that limit or accurately seeing his speedometer. In fact, he admitted in his deposition that he was consistently driving below sixty-five miles per hour before he received the suspension. Therefore, Fields does not assert that his alleged disability contributed in any way to at least the initial stages of the disciplinary measures taken by UPS.

When Bradshaw became suspicious of Fields's entries into his IVIS device because his shifts were not getting any shorter even though he began driving at a higher speed, he asked Edgar to compare Fields's IVIS time cards with his tachograph reports. UPS provided the court with copies of the tachograph reports and IVIS time cards as evidence of discrepancies between his reported driving time and his actual driving time. It alleges that these discrepancies demonstrate

that Fields was dishonest in reporting his work hours. Fields does not dispute the accuracy of these documents or that they show discrepancies ranging from twenty-seven minutes to fifty-nine minutes. He also does not dispute that these discrepancies show that he was not accurately recording his time. His only response is that the unrecorded time is a result of his need to take additional restroom breaks because of his diabetes, and therefore that he was terminated because of that alleged disability.

Even if Fields's argument that his unrecorded time was caused by medically necessary restroom breaks – and the evidence produced by UPS shows that at least some of the stops were not, in fact, for the sole purpose of using the restroom – his failure to record that time still violated company policy because Fields failed to accurately document his stops. Although it is not entirely clear, Fields's main argument appears to be either that he did not know that he needed to record his restroom breaks in the IVIS system, or that he knew the rule but could not comply with it because of his medical need for more restroom breaks than his meal time provided. In his deposition, Fields admitted that he had been told by multiple supervisors that he needed to use the restroom during his one-hour allotted "meal" time. Bradshaw clarified in his deposition that a restroom break may not need to be recorded in an emergency situation if a driver had already used all of his meal time, but he made it clear that this was an exception to the standard instruction to

drivers that their "meal" time should be used for restroom breaks. Fields did not allege that his breaks were emergencies or that he had used all of his meal time before making each of the undocumented stops.

Further, Fields also admitted that he did not accurately record his time – not solely in relation to restroom breaks – at least on February 4, 2010, when his UPS supervisors were conducting surveillance on his activities. As mentioned earlier, Fields did not provide specific evidence about notifying his supervisors of his need to take additional restroom breaks or requesting an accommodation for that requirement. Thus, the undisputed evidence shows that UPS had a good-faith basis for its belief that Fields was not accurately reporting the time during which he was driving – which was affirmed by Fields's own admissions in his deposition – and that UPS made the termination decision on that basis alone. Therefore, UPS is entitled to summary judgment on Fields's disability discrimination claim.

Retaliation

Count II of plaintiff's complaint alleges that Fields filed a charge of discrimination against UPS with the Equal Employment Opportunity Commission (EEOC) in 2000, and that because his termination was based in part on his filing of the discrimination charge, UPS unlawfully retaliated against him in violation of the MHRA. UPS argues that this claim fails as a matter of law because Fields

cannot establish a causal connection between Fields's filing of the discrimination charge and his termination.

Under the MHRA, it is unlawful discrimination "[t]o retaliate or discriminate in any manner against any other person because such person has opposed any practice prohibited by this chapter or because such person has filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding or hearing conducted pursuant to this chapter." Mo. Rev. Stat. § 213.070(2). The Missouri Supreme Court has applied the contributing factor test discussed in the disability discrimination analysis above to retaliation claims under the MHRA. *See Hill v. Ford Motor Co.*, 277 S.W.3d 659 (Mo. 2009) (en banc). Fields's retaliation claim can therefore survive summary judgment if there is a genuine issue of material fact as to whether his protected activity – filing a discrimination charge with the EEOC in 2000 – was a "contributing factor" in UPS's decision to terminate his employment in 2010.

As described above, the evidence demonstrates that Fields was terminated because of his dishonesty and failure to follow company policies. In order for Fields's contention that he was terminated in retaliation for filing a discrimination charge with the EEOC in 2000 – ten years before the termination – to be plausible, the supervisors who made his termination decision must have had knowledge about that earlier EEOC charge. Bradshaw – who claimed to have personally

made the ultimate decision to terminate Fields – provided a sworn affidavit stating that he did not know about the earlier EEOC filing until 2012. Edgar and Feeder Manager Al Worthy provided sworn affidavits containing the same information.

In order to defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Fields did not produce any evidence tending to show that his UPS supervisors did, in fact, have knowledge of his earlier EEOC claim. His conclusory allegation that a jury "could" conclude that his 2000 EEOC charge contributed to his termination is unsupported by any facts and therefore does not raise a genuine issue of material fact. *See Hervey v. Cnty. of Koochiching*, 527 F.3d 711, 723-24 (8th Cir. 2008). Therefore, UPS is entitled to summary judgment on Fields's retaliation claim.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [#19] is GRANTED, and defendant is entitled to summary judgment on all claims brought by plaintiff.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 6th day of September, 2012.